BARKDULL, Judge.
The defendant, appellant, Charles Al-pern, along with two others; was charged in a six count indictment with Count I, first degree murder, Count II, robbery with a firearm; Count III, conspiracy to commit robbery; Count IV, conspiracy to traffic in cocaine; Count V, shooting or throwing a deadly missile into an occupied vehicle; Count VI, unlawful possession of a firearm while engaged in a criminal offense. He was convicted of first degree felony murder; robbery with a firearm; conspiracy to commit robbery; conspiracy to traffic in cocaine; shooting within or into a vehicle or conveyance; and possession of a firearm while engaged in a felony. He was sentenced to life with a mandatory twenty-five year term as to Count I; a twelve year *1292 term as to Counts II, III, V and VI, and fifteen years as to Count IV. Counts I, II, III, V and VI are to run concurrent with each other. Count IV was to run concurrent to all other counts.' This appeal follows.
Some time prior to the incident giving rise to the instant case, the deceased, Gary Cuozzo and the defendant, Charles Alpern, had participated in at least one drug transaction. Three days before coming to Miami on this occasion, Cuozzo called Alpern about purchasing a kilo of cocaine. After Alpern checked about availability and price, Cuozzo agreed to come to Miami the following Friday. Cuozzo expressed concern about a delay in getting the cocaine after he arrived, as he did not want to wait around for several days. Alpern and Luis Beltran met Cuozzo at the airport on Friday. They did not have the cocaine with them because they could not get it. Cuoz-zo stayed overnight as they promised the cocaine would be available the next morning. Beltran still could not get the cocaine so he and Alpern decided to try to sell Cuozzo fake cocaine. When they produced the fake cocaine, Cuozzo refused to buy it, but he remained in the Miami area upon the promise that the cocaine was forthcoming. When Beltran and Alpern could not obtain any real or false cocaine, they discussed the possibility of robbing Cuozzo. Alpern insisted that they could not just rough up Cuozzo and rob him, but rather, they would have to kill him. Alpern kept putting Cuozzo off until Monday when Cuozzo decided to return home. At Alpern’s insistence he and Beltran picked Cuozzo up Monday morning to take him to the airport. Once again they prevailed upon Cuozzo that they would try to get the cocaine. They drove to Brickell Avenue, in downtown Miami, where they said they could get the cocaine. While they were driving, Cuozzo became more upset. They stopped for Beltran to make a phone call about the cocaine. While he was making the call Cuozzo allegedly threatened to kill Alpern if he was not at the airport on time. A short time later, Cuozzo reached into a knapsack where he had the money and a gun. He pulled out a gun. Alpern picked up a 45 lying on the floor of the car and shot Cuozzo 7 times in the back of the head. After the killing Beltran and Alpern drove around. They went to Alice Wainwright Park in Miami, where they dropped Cuozzo’s body. They then went to a motel on S.W. 8th Street. They split the money Cuozzo had with him, separated, and Al-pern finally took a taxi home to Broward County where he was arrested. He was ultimately charged, as previously stated, and tried. At trial, the state proceeded on the theory that Alpern was guilty of first degree murder and that the murder was committed while the defendant was committing the felonies of conspiracy to traffic in cocaine and robbery. The defendant’s theory of defense was that the shooting was in self-defense or in the alternative, if he was guilty of murder, it was only third degree felony murder since the only felony he was attempting to commit was the sale of a fake drug which is not an enumerated felony of first degree murder pursuant to Section 782.04(4), Florida Statutes. To that end the defendant requested the jury be instructed on the lesser included offense of third degree felony murder.[1] The request was denied, the jury found the defendant guilty of first degree felony murder.
*1293 On appeal the defendant alleges that it was error for the trial court to refuse to charge the jury on third degree felony murder as requested because in failing to give the requested charge, the jury was not charged on the defendant’s theory of the case.
We disagree for two reasons. First, the defendant was not charged with the selling of fraudulent cocaine. Under the schedule of lesser included offenses found in the Florida Standard Jury Instructions, West Florida Criminal Laws and Rules (1992), pamphlet, p. 1055-1057, third degree felony murder is not a necessary lesser included offense of first degree felony murder, but is a permissive (category 2) offense which may be given depending on the pleadings and proof. See Brown v. State, 206 So.2d 377 p. 384 (Fla.1968). Further, as stated by Judge Walden in Johnson v. State:
The requested instructions which were denied are for crimes for which appellant was not indicted nor are they the lesser included offenses of those charged. The defense’s theory was that the defendant may be guilty of other crimes but not those charged nor their lesser included offenses. Thus, if this were established beyond a reasonable doubt, the defendant would have to be found not guilty. The defendant is entitled to have the jury instructed on the law applicable to his theory of the defense if there is evidence introduced to support the instruction. Hudson v. State, 408 So.2d 224 (Fla. 4th DCA 1981). However, there is no basis in law that entitles a defendant to have the jury instructed on the elements of crimes for which he is not charged, of which he is guilty, and thus must be found not guilty. The reason is clear: such an instruction would only confuse a jury and essentially try a defendant for crimes not charged.
# sjt ⅜ * * *
484 So.2d 1347 (Fla. 4th DCA 1986). Emphasis added. Secondly, the record clearly shows that the trial judge did instruct the jury on all facets of murder, including third degree murder[2] as it pertained to the underlying felonies of the robbery charge, all of which were rejected by the jury in finding the defendant guilty of first degree felony murder.[3]
As the record contains substantial competent evidence to show the murder herein was committed during the course of a robbery, any error would at most constitute harmless error. See State v. Abreau, 363 So.2d 1063 (Fla.1978).
Therefore, we find no reversible error in the actions of the trial court and the convictions and sentence appealed herein are hereby affirmed.
Affirmed.
GERSTEN, J., concurs.

.The requested charge denied was as follows:
MURDER — THIRD DEGREE
F.S. 782.04(4)
Before you can find the defendant guilty of Third Degree Murder, as a lesser included offense of First Degree Murder, the State must prove the following three elements beyond a reasonable doubt:
1. GARY SAMUEL CUOZZO is dead.
2. (a) The death occurred as a consequence of and while CHARLES HARRY ALPERN was engaged in the commission of Grand Theft or Sale of Any Substance in Lieu of Cocaine.
(b) The death occurred as a consequence of and while CHARLES HARRY ALPERN was attempting to commit Grand Theft or Sale of Any Substance in Lieu of Cocaine.
3.CHARLES HARRY ALPERN was the person who actually killed GARY SAMUEL CUOZZO.
It is not necessary for the State to prove the killing was perpetrated with a design to effect death.
Emphasis added.

. The jury charge as given was:
MURDER — THIRD DEGREE
F.S. 782.04(4)
Before you can find the defendant guilty of Third Degree Murder, as a lesser included offense of First Degree Murder, the State must prove the following three elements beyond a reasonable doubt:
1. GARY SAMUEL CUOZZO is dead.
2. (a) The death occurred as a consequence of and while CHARLES HARRY ALPERN was engaged in the commission of Grand Theft; b) The death occurred as a consequence of and while CHARLES HARRY ALPERN was attempting to commit Grand Theft;
3. CHARLES HARRY ALPERN was the person who actually killed GARY SAMUEL CUOZZO.
It is not necessary for the State to prove the killing was perpetrated with a design to effect death.

.The jury verdict reads in part as follows:
VERDICT
We, the jury, at Miami, Dade County, Florida, this 3rd day of May, 1991 find as follows, as to Count I of the charge: (check only one as to this count)
x a. The defendant is guilty of Felony Murder First Degree Murder, as charged.
_b. The defendant is guilty of Second Degree Murder, as a lesser included offense.
[ ] With firearm.
[ ] Without a firearm.
_c. The defendant is guilty of Third Degree Murder, as a lesser included offense.
[ ] With a firearm.
[ ] Without a firearm.
_d. The defendant is guilty of Manslaughter, as a lesser included offense.